Good morning, Your Honors. My name is Michael Mueller. I represent Defendant Appellant Tyson Foods in the first case this morning. I've reserved five minutes for my rebuttal. As the Court knows, this is a class action wage and hour case that was certified by Judge Mark Bennett and tried to jury verdict before Judge John Jarvie. As Justice Scalia recently wrote for the majority in American Express v. Italian Colors Restaurant, Rule 23 imposes stringent requirements for certification that in practice exclude most claims. And as the Supreme Court recently ruled in Comcast, the plaintiffs must satisfy the Rule 23 requirements through evidentiary proof. The essence of any overtime case is establishing liability for each plaintiff by proving time that each plaintiff actually worked in overtime but was not paid for. This Court said so in Lopez v. Tyson Foods, which Judge Benton is familiar with, Carmody v. Kansas City Board of Police Commissioners, which is not a class case but does interpret Anderson, and Murray v. Stuckey's, which was a civil case under the FLSA but not Rule 23. But all these cases make the same point. Here we're dealing with a very large class, over 3,000 employees, over a long period of time, six and a half years, and the reason I point out why the length of time is important is there was over 100% turnover in the class. At any one time, only 1,300 employees worked for us, but there were over 3,300 in the class. That necessarily means substantial rollover as our pay practices keep changing. For example, there's no evidence in this case that all the employees worked before we started paying for the walking time, a significant point that Mr. Wiggins will argue, but there's no evidence, and in fact, the evidence, as I'll point out in a minute, shows that many of the people worked exclusively after we were paying for the walking time. Counsel, of course, I like a lot of your authority that you've cited so far, but the doctrinal problem I have with this case is the Mount Clemens case, because you read parts of Mount Clemens, and it sounds like if there's any inference we can make for the defendants in the FLSA case, we make them. It says any reasonable inference we make, we make. And as you know, or at least my clerks tell me, none of the cases you've cited mention Mount Clemens at all are FLSA cases. So is FLSA special, and is it insulated from the recent flow of these class action cases? A couple of questions there, Your Honor. First of all, the jury verdict here was under Rule 23. We know this for a certainty because the jury awarded $2.8 million, and their highest dollar claim under the FLSA was $1.6 million. That's in Plaintiff's Trial Exhibit 345, and the plaintiffs admit the jury actually awarded less than that. But that doesn't, in closing, Mr. Wiggins argued it was a Rule 23 case, and he asked for the Rule 23 dollar calculations. Actually, many of the courts' cases we've cited do interpret Anderson v. Mount Clemens Pottery. Carmody does. I'm talking about the United States Supreme Court cases on class actions like Walmart, Lopez. Oh, it would be true that the Supreme Court decisions interpreting Rule 23 do not discuss Anderson. Judge Posner does in the Seventh Circuit opinion in Espenside, which I would commend to the panel's reading because it's right on point with the facts of this case and the reasoning. And he points out that by the time you get to trial, the standards essentially merge. And I would just commend that for the court's consideration. Also, the parties agreed here the standards essentially merged by the time of trial. The jury instruction is a pretty good amalgamation of the standards under Rule 23 in Section 16B. And so I don't think that the Supreme Court's failure to address Anderson in a Rule 23 case matters. In fact, I think it's important because in the 60-plus years since Anderson, the Supreme on Rule 23. And it's clear that due process concerns are governing those cases. And those due process concerns, which were not addressed in Anderson, would clearly apply in any case. Is it your position that the plaintiffs can't rely on any representative evidence? No, that's not our position. We believe that you can rely on representative evidence if they had proper representative evidence. But there's no quarrel with the concept of representative evidence. Under Rule 23, it's not typically called representative evidence. It's called common evidence. But I think it's a distinction without a difference. We're not opposing the concept of representative evidence. We just believe the evidence was not representative here. With regard to the two classes, the FSLA class and the Rule 23 class, did you at the close of, at some time after Judge Jarvie took over the case, did you move to decertify the preliminary ruling that Judge Bennett entered in the FSLA class? No. We only did it for the Rule 23 class because when Dukes first came out, it was a Rule 23 case. And it wasn't clear the courts were going to start applying it in FLSA cases. But we've now seen across the country that courts have been applying Dukes in all kinds of class actions, including hybrid, what they call hybrid FLSA and Rule 23 class actions. And in our 50A and 50B motion, we did move to decertify both of the classes, but just not pretrial. You did move to decertify both classes? We moved to decertify the Rule 23 class before trial, right when Dukes came out. And then during the trial at our 50A and 50B motion, we did move to decertify both classes. But there was never any ruling by Judge Jarvie on the decertification of the FSLA class, was there, that I could find? You're correct, Your Honor. That's correct. So where are we on that? Well. Does that preliminary conditional certification hold up for the plaintiffs here? I don't think so, Your Honor. We have no obligation to move to decertify before we start hearing any proofs. We opposed the motion when it was first made. Judge Bennett at least says that you do in his voluminous ruling before the case moved over to Judge Jarvie that the conditional certification and then the, whatever he calls this, the two-step procedure, I could find nothing more than the conditional certification. I had difficulty in finding where you had moved to decertify that conditional. You would be correct. We opposed the conditional certification. We didn't remove to decertify the FLSA case before trial. But I thought you said that you moved at the end in your motion to decertify, so I'm. No, we moved to decertify the Rule 23 class. And then we waited until we heard their opening case and made a 50A motion to decertify both of them. So you're, before us on appeal, that's, you've. It's been preserved. Objected that. Yes. Yes. All right. Counsel, what was defective about the plaintiff's evidence in this case? In this case, the plaintiff's called four employees, there were only two from each side of the plant. There's 374 different job codes in the plant. That doesn't mean people, that means different job positions. The two people they called from each side of the plant didn't even begin to remotely address the wide disparity in jobs and differences in jobs among the people. As Judge Bennett even noted originally, there are some very big factual differences among hourly employees at Tyson. That's at the addendum at page 56. And he said they are spread out across six different departments. They have their own specific duties and supervisors. Moreover, the kinds of PPE worn, the types of tools used, and the compensation system within the departments are often different also at addendum 56. That held up at trial. That is, we don't disagree with Judge Bennett's fact findings. We just think it was an abuse of discretion on those facts, which came out at trial to reach any conclusions on who was not paid overtime. Counsel, how good were your timesheets? Most companies have timesheets by each employee. And they're automated these days tremendously. Well, the timesheets... I haven't looked at the naked evidence. How good are your timesheets for each plaintiff? Well, the timesheets don't capture the donning and doffing time. Now, excuse me. How good are your timesheets? What are your timesheets? Very good. They're electronic. They're electronic. There's no quarrel with the timesheets. In fact, their expert ran out an exhibit showing a cumulative distribution of punch times from beginning to end. And we used some of that evidence to prove that their clients weren't even in the plant long enough to get the amount of overtime that their time study expert measured. And if you look at my cross-examination of Dr. Fox in the trial, she admits that. That the time records which prove when people are there are sometimes showing they're not there even long enough for the amount of time their damage expert gave them in credit. We will concede that our time records do not capture the donning and doffing time. I mean, it's just set up that way because we never thought the time was compensable. And so what's defective about it, Judge Smith? Well, what happens is they take a time study expert who measures a very small sample of people. And he doesn't measure any one person. He measures different people doing little tiny parts of the day. And in some cases, his sample sizes are as small as 11 or 15 or 21 people in the entire class. Was that person an expert? He was an expert, yeah. He testified that was a sufficient sample size? No, he said he thought it was a sufficient sample size and he specifically said it was not statistically random. That's at trial transcript 961 and 977. And he didn't test for statistical significance. He just said he thought, if it's a dixit of the expert, it was sufficient. But there was no way for him to do that. And in fact, he wasn't measuring everybody in all the job positions at issue, so. Did you seek to exclude the testimony of the expert? No, not in this case. We did not. In fact, the jury rejected the expert. So our Daubert motion would have been, the plaintiffs admit this, that the jury did not accept Dr. Miracles or Dr. Fox's times. They do the math, I think at page 39 of their brief. And they admit they first took out all his statistical outliers, which we call very high numbers that are way outside the average. They then subtracted the meal period claim, which we won on, which left them even less of a sample size, and then they cut it in half on top of that. So our position was we didn't need to move to exclude him. Did these four people include people from both classes, or did they need to be? Yes, and the people he measured, we have no way of knowing that. Nobody has any way of knowing, because we don't know their names. So he just went in and assumed that everybody he was looking at was within the class. But damages were awarded to individuals in both class on the basis of this test. No, the jury awarded one dollar number, and the plaintiffs asked for a rule 23 number only, and they're not duplicative. You can't get both, so it would only be the rule 23 class. I do want to make two points, because I'm already into my rebuttal. First, you cannot approach a class action through averaging, and this doesn't clearly come through in our briefing. This court said in Blades versus Monsanto, where an expert, there was an alleged price-fixing conspiracy, and the expert was alleged to be using a model to estimate the average. The allegation was that they were raising the average price of seeds. This court said you can't take an average to prove a class action violation, because it didn't prove that each price at issue had been raised artificially. So that each purchaser wouldn't necessarily have paid more than they otherwise would. That's exactly what happened in this case, because they used an average and then just applied it to people for whom there was no evidence had worked that average. The second thing is, there's clearly people in this class with $0 damages. Dr. Fox admitted, even under the best assumptions, there were 212 people without damages. And she presented a model that showed 495 people had zero damages. And then her assumed 15 minutes a day, which is still higher than what the jury awarded, there's 604 people without damages. And I would point out that this court, another point I want to clarify that wasn't in our briefing, where a defendant argues that there are some members who likely have no standing because they lack injury. This court reviews de novo, not for abuse of discretion. And that's what we have here. Council, is there any question that all of the persons identified in this class were subject to the same policy regarding donning and doffing of equipment? They were all subject to donning and doffing. We paid them hundreds of different combinations of K code, meaning some of these people were paid as much as eight minutes, others were paid only four minutes. And if a person works only four minutes a day, like one of their plaintiffs who testified, Don Brown, said it took him two minutes in the morning, I think our seven minute payment would cover that. Or at least, there's no evidence that he worked as much as the 10.23 minutes that their Dr. Miracle assumed he worked pre-shift when on cross examination he admitted it was two minutes pre-shift. Is this my, I'm into my rebuttal, right? Yes, that's correct.  Thank you, counsel. Now, Mr. Wiggins. Good morning. May it please the court, I'm Bob Wiggins from Birmingham, Alabama, representing the plaintiff class. The judge and the jury, two judges and a jury, have already heard each of these arguments that were made today, the ones that were made, and rejected them. The two district judges' findings have not been argued to be clearly erroneous. That's the standard on the factual question of whether there is a common, uniformly applied policy that goes across the board to each class member. That was found as a fact by two judges. It hasn't been shown to be clearly erroneous. A standard which does not allow this court to substitute its view of the evidence or its judgment for that of the fact finder. The more important- Counsel, would you address one of the final points made by your opponent regarding individuals receiving compensation who had no damages? Well, there is no evidence of anyone receiving damages who had no injury. Let me address that. They mentioned 212 people. In a class this large, you're going to have some people that are short term. They may have been there less than a week, less than two weeks. They may be part time. And the method we use singled them out. The reason you know there's 212, because we showed it. We used their payroll records to show the amount of time over 40. We didn't use a formula. We used their records. How did you use their record to show that? Well, it's right in their record. They punch a clock and they pay them, their pay stubs and their computer records. Counsel, I thought that they weren't clocking the donning and doffing. That's what part of this case is all about in all these cases. Well, they're clocking the overtime, though. See, on liability, we have to prove the fact of non-payment. Now, on damages, we have to prove the amount. But on liability, we just have to prove the fact of non-payment. And we did that two ways. One, the payroll records show the weeks that employees were in an overtime status. Almost always working 48 hours, six days a week, was the testimony from management and shown by the record. And that doesn't include the donning and doffing. That's the normal time. That's the normal time. Okay, go ahead. Then you add to that the four minutes that they pay for some of the activities. That's automatically in an overtime status because they're already in an overtime status. Or you add to it what our expert or the jury found. That's necessarily overtime because they're already in an overtime status. Those that weren't, 212 people, were singled out by our method. Our method allows, through their records and our expert who tabulated those records, to have in a one-stroke determination of who worked overtime and was not paid. And how much each one. And how much each one lost per day. Not per week. Not per month. Not per years. It was a day-by-day, person-by-person calculation. But you use an average time for the donning, doffing, and walking, right? That's what the expert has to use. No, not fully, Your Honor. The walking time, which is the biggest component, was a physical measurement from midpoint of the locker room to midpoint of the line. No averaging at all. That was, Tyson itself used the same method to determine the walking time component. Measuring the physical distance by a standard walking speed. They came up with the same time we did. You know, that is the biggest component of the back pay. My recollection, it's in their brief, and our brief too, that they were paying, I think they determined that the walking time was six minutes. But that six minutes, when you add it, is automatically overtime. So we say that for the- You said about half the amount of overtime, you claim? Oh, it's at least half. Because you have to remember- You're sure of that? Yes. Because our expert, we argued for 18 minutes for one department and 21 minutes for the other department. The jury didn't give us the meal time. When you subtract the meal time, they then took 50% off. When you take 50% off of 18 minutes, you're down to nine minutes. Four minutes was for the knife-related activities. They calculated five to six minutes was for walking. So virtually all the time that the jury awarded was walking time, which is the very time the Supreme Court held to be compensable in Alvarez. So we say we proved liability through those two means. Number one, undisputed policy of paying zero for the walking time held compensable in Alvarez. Zero. But how about damages for the purposes of the validity of your class? On the damages, there is also not a formula used. The difference on damages is you now have to prove not just the fact of nonpayment, but the amount of nonpayment. I read Dukes. The commonality matter requires you to prove the damages of each member of the class or your class is problematic. We contend we did that. One, by taking the standard walking time, which is not an average, and adding that to the payroll records of the actual time they worked each day and multiplying. It's simple math. But your expert's testimony was pretty iffy in a whole lot of areas if you were attempting to prove the damages of each member of the class, it seems to me. The back pay expert, I don't believe was iffy at all. She simply did math based on their payroll records. They decided not to call their back pay expert because they essentially agreed with their method. You got the payroll records into evidence through your expert? Yes. Like hearsay evidence, so to speak? Well, no. It was directly from the payroll tapes they gave us, the computer tapes. Business record, yes. An exception to the hearsay. Yes. And so the back pay phase of the case was not a formula whatsoever. The walking time was the physical measurement. The overtime component was straight off their records, the actual time. What they're calling an average is another component, one that the jury discounted when it reduced the thing by 50%. The iffiness thing that you're describing, I think, probably comes from their attack on the time study expert rather than the back pay expert. The jury accepted his testimony but reduced it by 50% for various factors that was in the cross-examination. They were never asked, and they couldn't have, quantified each point the defendant was making. The defendant was not attacking 100% of the calculation. They were cherry-picking certain points within the calculation. But they never once quantified the effect of their points of criticism. And that's their burden under Mount Clemens. That is the precise burden they have. We have a burden of showing a rough approximation through the reasonable inference because we don't have their records. If they had kept their records, we wouldn't have to use inference. I'm talking about the record of the non-paid time. Once we come up with a rough approximation under Mount Clemens, the burden shifts to the employer to come up with what the court called the more precise calculation. That was their burden to show for their points, they should have quantified the effect on the back pay of each point they were making, not just throw them all in the hopper and hope the jury gets confused and awards nothing. But even if you are entitled to the full thrust of Mount Clemens, it still boils down in the later cases such as Dukes and there's another case after Dukes that you have to establish the damages for each member of the class with some certainty in order to keep your class under the commonality rule, a portion of Rule 23, right? I don't think Dukes stands for that proposition. I think Dukes stands, and if you read Dukes in light of Amgen, which is this past February when they clarified, what they said is we have to have a common question. Well, we do not have to have a common answer. In other words, we have to have a common methodology, a common means of getting at the issue. But we can't guarantee that every class member is going to come out with back pay. We just have to have a methodology that will get you to the issue of which ones, separating the sheep from the goats, which is the point of a trial. So you have some members of the class that are being reimbursed by the judgment that have no injury at all, is that? No, no, that's not true. No, just the opposite. Our method weeded out the ones that had less, that were not in an overtime status. That's the 212 people. The other 3,100 people in the class all had back pay, all had overtime shown and were given the amount the jury found to be reasonable, which was seven to nine minutes. Tyson argues four minutes. The jury said, no, we think it's not 18 to 21, which is what we tried to prove. They said it's more like seven to nine minutes. In fact, Tyson itself in 2007 began paying seven to nine minutes because of Alvarez. But that was three years late. During the, from 2004 to 2007, they paid zero. Zero for what Alvarez held to be compensable time. So when you say back pay, are you including overtime pay under the Fair Labor Standards Act or is that, has that been taken care of by what the jury did? I'm sorry, Your Honor. Well, you said back pay, but the Fair Labor Standards Act is an overtime pay. Yes. Measure. Yes. So are you including damages for lack of overtime pay in your back pay, or is that a separate issue? The back pay is strictly and solely overtime. None of it is regular time. The $212 that didn't get up to the 40-hour threshold for overtime, we not, we had, we put a rule in, in the calculation that if you didn't make 50, if you didn't reach the $50 level, administratively it's too hard, it's too expensive to try to find them and distribute the money. So we put in an administrative rule. Anybody under $50 will be listed as zero. So there's no evidence that they actually didn't have any injury. It's just administratively, we just made a choice that we couldn't distribute that, people at that low level, those $212. But there is no, there is not a single individual that's, that's getting back pay on that list who didn't actually have overtime and unpaid time added to the overtime at the rate the jury found reasonable. So I'd like to take just a minute to answer Judge Benton's first question. Is Mount Clemens special and does it somehow cause the Walmart line of cases not to apply? I think it absolutely does. The Walmart is a Rule 23 procedural case. The Rules Enabling Act says that a rule of procedure can't change the substantive law. It cannot add or subtract from the substantive law. Mount Clemens establishes a substantive law for this type of case. It sets up a method of trial for cases in which the employer has not kept the records of time required by the statute. And here it's undisputed that Tyson elected not to keep the time at issue. It kept the time once you get to the line, once the line starts to move with pork or beef. But it does not keep the time at issue here getting ready for that work, which the jury found to be work and found to be integral and indispensable work. By the way, that is an across-the-board ruling made in one stroke for the class as a whole, which satisfies Walmart. Even the strictest reading of Walmart is satisfied by that finding of work and integral and indispensable. But Mount Clemens Pottery had no time records at all, did they? Mount Clemens did not have the time at issue. The interesting thing about Mount Clemens is it's a Donning and Dolphin case. Same general fact pattern is here. They kept the time except for the Donning and Dolphin time. And the court said, well, if they had kept the time, each class member could easily prove their case just to introduce the records. But when you don't keep the time at issue, then you have to set up a means so that the plaintiff can somehow get proof in to rectify that violation of the statute. The statute is explicit that that time should be kept. And there's nothing in Walmart that even remotely considers that issue. Mr. Wiggins, you've exhausted your argument time. Thank you. Thank you, Your Honor. Mr. Mueller, you may conclude your argument. I have seven points I'd like to make. First, there's no payroll records in the evidence. I checked the appendix yesterday. They're nowhere. That statement is just incorrect. The jury was given summary testimony of what she thought she saw looking at records, but they did not have the pay records or time records. Second, we are not challenging Judge Bennett's fact findings at the first certification. In fact, we embrace them. If you look at addendum pages 64 to 66, he thought you could certify the class because of a common allegation of a violation of the same law. After Dukes, that's no longer good law. That does not meet the rigorous inquiry that's required nowadays. You're telling me that you objected enough that we have jurisdiction over that? Oh, absolutely. He did not engage in any analysis of whether they could prove at trial unpaid overtime. And the Comcast, which I realize comes after Bennett's decision, says you've got to prove at class cert and at trial how you're going to prove common damages on a class-wide basis. Third, the walking time was not six minutes, as Mr. Wiggins said. It was three minutes. And in fact, that's why there's no dispute that after 2007, everyone who was hired or worked after that date was fully paid for the walking time. It's three minutes one way and six minutes two ways, counsel. No, it's one and a half minutes each way. It's three minutes a day. Fourth, we proved that there are people in this class with zero damages, which means under Halverson and Blades, there's no standing and therefore no class. Also, jury instruction number two said there couldn't be people without damages. Fifth, at 15 minutes a day, which is actually less than jury awarded, their damage expert put up a hypothetical 15 minutes a day and showed that there were 604 people who recovered nothing. That's Plaintiff's Exhibit 348 in the appendix at page 871. And she admitted she had no proof that any of those people worked off the clock. That's in the trial transcript at pages 1267 to 70 and 1304 to 07. She just put in their experts' numbers, which they admit in their brief the jury rejected. Six, this whole notion of a one-stroke average of proving your case, you can prove your case in one stroke. You can't prove it through an average. The Seventh Circuit said so in Espenside. This court said so in Blades. The Fifth Circuit said so in Seminole versus Raymark, which I commend to the court's reading. And two district courts have rejected- Go ahead, give us your seventh point. Oh, seventh. Even if everyone had damages, the burden on damages never shifted to us because under Carmody and this court's ruling on Marshall versus Truman-Arnold distributing, they have to prove unpaid overtime for each non-testifying member of the class. They didn't do that, so the burden never shifted to us. And the Supreme Court rejected use of a formula. In Anderson at page 689. Thank you, counsel. Court appreciates your argument and the briefing which you've submitted in the case. It's a very complicated and difficult matter, but we will do our best with it and render a decision in due course. Thank you both. Apparently, what we're going to do is just swap roles here.